Our next and last case for the day is the appeal in Pareja versus Attorney General of the United States number 4598 of 2008. Mr. Isakson. Your Honors, my name is David A. Isakson. I represent the petitioner, Blanca Barrales-Pareja. I would like to reserve three minutes of my time for rebuttal. Your Honor. I would also like at the outset to apologize to the Court for our citation to Jones versus State Board of Education of Tennessee for the cases cited therein. Cases cited therein are still useful, but Jones itself is actually not a precedential decision. It's a dissent from a dismissal of certiorari as improvidently granted. It's inexcusable that I missed that and cited it anyway for the cases in there, so I just wanted to make that clear. Now, turning to the substance, the BIA, we would submit, made several errors of law in this case which this Court has jurisdiction to correct. The BIA says we don't have jurisdiction, and they argue that Ms. Pareja is just recasting challenges to an exercise of discretion by the Attorney General. In fact, they say that it's recasting that exercise into constitutional and factual issues, and I'm not sure what factual issues they're referring to, but in any event, it would seem to be that it's being recast into a legal issue. Why are they not correct? Where this Court has previously said that someone has been recasting issues, it's something like Cospedo or Jarbaugh where either the petitioner is making no effort to tie their claims to a particular constitutional or statutory argument in any developed way. For example, in Jarbaugh, when Cospedo, he's arguing that the immigration judge gave short shrift to consider certain evidence, there is not the sort of attack on the overall legal standard or systematic analytical process that is at issue here, so that in Alaca, for example, this Court has already held that an allegation that the incorrect legal standard is being used is reviewable, notwithstanding the fact that 1252A2C would bar jurisdiction over any issue in a criminal case unless protected by the 1252A2D jurisdiction for issues of law. This Court hasn't yet had occasion to take the one step beyond that by analogy and say that A2D can also save issues that would otherwise be argued barred under A2B, but many other courts of appeals have, as we addressed primarily in our reply brief, since it seemed to be the area the government was focusing on. In Kahn, in the Second Circuit, 212C is a discretionary application that the petitioner argued that the immigration judge had inappropriately applied a threshold test before getting to the complete review of favorable factors. Second Circuit found jurisdiction in Gomez-Perez in the Eighth Circuit. The petitioner argued that the immigration judge, the BIA, were making an analytical mistake by focusing on present hardship situation of the child or future. Eighth Circuit found jurisdiction in Lumetaw in the First Circuit, which was applying the slightly different jurisdictional bar at 1158A3, but that's a bar also on review of a different kind of discretionary determination, asylum timeliness. So what is it that you contend the BIA did here that was legally incorrect? Or in what way did the BIA disregard its precedent interpreting hardship, as I think I understand it? Well, my concern is not so much that they disregarded the precedent as that the precedent is wrong. The BIA precedent, this is what we've attacked on, in one case at least, sort of the first two-part point that we make is about the merits of the precedent as opposed to the BIA's ability to have followed it or not, is Monreal and Andazola. Monreal is the case in 2001 where they say, in effect, yes, we have this previous case law. They discussed extensively their previous case law. No, they did, and they rejected it for reasons that we think are not legally supportable. They're looking, they have this extensive set of previous case law from 1952 to 1962 in non-criminal cases. They may also have some subsequent, although they didn't cite any of their own case law from then. They cited one Seventh Circuit case, Cortez-Castillo, which also didn't itself cite any BIA precedents from that criminal period. And we think that resorting to the criminal alien period is something of a non-sequitur anyway because this petitioner and all other applicants for non-resident cancellation of removal can't have criminal records. INA 240-AB1C, as we discussed in the brief, bars cancellation for people with criminal records. So the appropriate period to compare to would be cancellation of removal, or rather suspension of deportation requiring exceptional, extreme, and unusual hardship for people with non-criminal records. They have years of case law on what that means, which under Laurellard we think Congress is presumed to have known about and relied on. More recently, we pointed out our 28J letter, Hing Sum in the Ninth Circuit. But there was, isn't the difference between here and Laurellard is it was an intervening, it was intervening language. In 1962, they changed the language to extreme hardship. But the case law we're looking at is the previous case law from 1952 to 1962. I know. You want to jump over the 1962 law, which was changed in 1996, and go back to the 1952 law. That's a little different than Laurellard. You mean because it wasn't at the same time? It did exist. It wasn't the immediate law that the 1996 law replaced. It was. It was in a different context. Exceptional, extreme, and unusual hardship continued to occur. So it did, but the law, this standard does exist. It is something that they had interpreted and have case law on. And that's not the only mistake that we think they made. The other issue, which the eight dissenters in Matter of Andazola point out, is that yes, Congress is trying to narrow the class of people eligible for cancellation, but it's done it in a sufficient number of other ways, with the 10-year requirement of physical presence, where stop time means you have to have the whole 10 years before you're put into proceedings, with the requirement that only hardship to the qualifying relative be considered, with the, there's in the end a cap, actually, a 4,000 number cap on the number of people who can be granted cancellation, which is cited in the Andazola dissents we rely on. That's INA 240AE1. So there as well, when they say, in effect, that no reasonably common fact pattern can be a misreading of congressional intent in Andazola, but that's only one of the three sort of classes of errors, legal errors, that we've said they've made here. The next one is a combination of their precedent and their way of distinguishing the precedent. The precedent in Racines, which is their one presidential grant, the way they distinguish that case in this case is by saying, you know, the Racines alien had, the immigration judge has six U.S. citizen children, BIA corrects him, it's four. The respondent in Racines had, for example, parents who were lawful permanent residents. Those things are all well and good to consider at the later discretionary stage, the final stage, if this person has established the hardship to their child, do they merit cancellation? But that's not the stage that my client's having a problem with. The immigration judge specifically said she would be granted in the exercise of discretion. BIA called their case sympathetic and didn't address it. And it makes sense, because there are other positive discretionary factors, like the fact that she herself was brought here by her parents when she was only 13, which would come in at that stage. But at the stage where you're determining whether there is, to quote the statute, exceptional and extremely unusual hardship to the alien spouse, parent, or child who is a citizen of the United States or an alien admitted for lawful permanent, sorry, lawfully admitted for permanent residence, that's in the singular. That's, is there exceptional and extremely unusual hardship to this child? So at that stage of the analysis, it's not an appropriate basis of distinction to say, you, Ms. Pareja, have only one child. The alien we granted cancellation had four U.S. citizen children plus U.S. citizen parents, therefore your case is distinct. That goes against the text of 240A.B.1.D. They should have saved those factors for the final discretionary analysis. And it's conceivable, this is sort of a pre-rebuttal, maybe they were trying to argue that they're making a finding of fact about the specific implications of there being only one child for the hardship to this child specifically, which could go either way. You know, the mother only has one mouth to feed, but there are no brothers or sisters to keep the child company while the mother is working. The immigration judge didn't make a finding of fact one way or the other on that. And what we've been arguing since the briefs that have gotten more case law support for recently that was addressed in a couple of the 28J letters we these predictions about the future are a finding of fact. And as the Second Circuit recently pointed out in Padmore, the prohibition on making these findings of fact also applies not just where you're reviewing an IJ finding for clear error, as in Kaplun, but also where the IJ is making a finding, the BIA rather, is making a finding that hasn't been made one way or the other below. And so the BIA was committing one of these two errors. We think it was misreading the statute and just saying, in effect, that we can, or at least applying a standard, not necessarily saying they were applying a standard. As we pointed out from Alvarado de Rodriguez, what matters is the standard they applied, not what they said they were applying. They are either applying a standard which gives weight at the hardship stage to how many qualifying relatives you have, or they're making their own findings of fact about the implications of how many qualifying relatives she has, and neither is permissible. So that's the second point, and we think that's clearly an issue of law. We're objecting to the analytic logic they're using in the same way that in Gomez-Perez, the petitioner was objecting to looking at the present circumstances of the children rather than the future, or in the same way that in Lumita, the First Circuit-found jurisdiction where the BIA had, in effect, charged the petitioner with time overrunning the one-year deadline even existed and failed to give him credit for time when he was on his wife's application. So in its nature, clearly, these are issues of law. And then the third issue, which I think in its nature is also clearly an issue of law, is the unconstitutional conditions constitutional doubt problem. There's actually a quote in the joint appendix at 226 that somewhat illustrates this, although it's only DHS argument where they say the child is going back to her country. It's not her country. She's a United States citizen. She has the constitutional right to remain in the United States. And while we accept, and have stated since the opening brief, that under ACOSTA, that doesn't give her mother a freestanding constitutional right to remain here because Congress could have refrained from enacting this cancellation statute at all. That doesn't imply that Congress can enact this statute and give this U.S. citizen, now seven-year-old child, the privilege to be free from exceptional, extreme, unusual hardship, but only on the condition that, if it's the less bad option, she give up her right to remain in the United States and instead, in effect, get deported to Mexico with her mother. And under DiBartolo, any constitutional doubt raised by that problem trumps Chevron deference. You don't defer to an administrative interpretation that would raise substantial constitutional issues the way you normally would defer to any other administrative interpretation. It's important to note there, I think, also, that the BIA is quite clearly comfortable with making counterfactual assumptions for policy reasons. They have, in this very case, said at A3 of the joint appendix that we are not willing to assume that relatives who don't have lawful status in the United States will remain here. It's outside the record. I understand one of the relatives may, in fact, have gone back. But that's not what's in this record. So they're clearly willing to say, as a matter of policy, we don't think the statute prescribes that we just look at sort of what will happen as opposed to what should happen as a matter of law. What is the hardship? I must admit, I never saw an attorney could get more in faster than you. I mean, really. And we're trying to follow it. I'm sorry, Your Honor. It's a fundamental question. Okay. What is the unusual hardship to the daughter, in this case, if the mother goes back to Mexico that struck me, and I agree with you, that she can stay in this country. And if she stays in this country, then she doesn't have her mother here. And that's a hardship. I understand it. But that happens all the time. And as a matter of fact, even in a totally different context, that happens all the time. A domestic divorce, somebody moves to California, one of the parents, and the child is here. I mean, what is the unusual hardship that she has other than her mother isn't going to be here? There are two responses to that, Your Honor. The first, factually, there is in the record this diagnosis that she has separation anxiety disorder. And in fact, the BIA dismissed it specifically because they have said she had not shown. Any child, it's terrible to lose your mother. But I mean, and I'm assuming that she's not going back. But so I don't get into this unconstitutional condition. But I mean, you know, that kind of evidence, you know, what you're doing here is think about it. You know, it's very easy to be sympathetic with these people. Very, very easy. But we can't open up a system where you know, boy, if I can only get into the United States, even though it's illegal, now I'll have a child. The child will be a citizen. And now I'll be able to say it'll be unusual hardship to the child if I have to go back. That's got to be discouraged. Your Honor, there are a few responses to that. One, I think there's a chainery problem with defending the BIA's decision on that ground because the BIA explicitly refused to consider the hardship to Joanne if she remains in the United States and her mother returns to Mexico. Well, there isn't. I don't see where there is any. I mean, it's so unique. Isn't that because they took her at her word and the mother said that she was going to go to Mexico with her? No, but we tried to ask the hypothetical question. It's in the record. If you look at Joint Appendix 163 to 164, we ask what the hard, my predecessor in this case, asked what the hardship will be if the child stays here and the mother goes back. DHS objects. It's sustained. We raise the issue on appeal again at 3637 of the Joint Appendix. We have been trying to raise this hypothetical issue, and the BIA has explicitly refused to analyze that because they have said, yes, as a factual matter, she will surrender her right to remain in the United States, at least temporarily, in order to try to exercise what exceptional, extreme, and unusual hardship. But I'm just saying in response to Your Honor's question, Judge Greenberg, that I respectfully don't think it would be open to this Court to affirm on a ground that the BIA never raised. The BIA has been very insistent that because, as Your Honor said, that is not factually what's most likely going to happen, that they will not consider this alternative hypothetical. And so whether it's because we view it and it's clearly not adequate, should we send it back to tell them to see if it's adequate? It's their job in the first instance to apply the correct legal standard. I think the Supreme Court precedent is pretty clear on that. Beyond that, though, Your Honor, also to address first, I think the hardship is more unusual because there's a psychological diagnosis in the record regarding the separation that the BIA said wasn't material precisely because it wasn't acting on this assumption. The other point I wanted to make in what you were saying about discouraging sort of the number of people doing this, that gets back, I think, to how difficult it is to qualify for this form of relief, even completely apart from the hardship. You have to be here for 10 years before any notice to appear is issued against you, in addition to having a completely clean record and so on, and only 4,000 people in the entire country at any fiscal year can be granted this relief anyway, and they're only looking to the hardship to your child and not to you. They don't care how bad your life is. It is at least not rational for people to come in and have a child on the assumption that even if the BIA either backs off its refusal to make this assumption that a child will remain in the United States or backs off its overly strict interpretation of hardship, that people will suddenly, you know, thousands and thousands and thousands of people will be being granted cancellation all over the  place. I can't get inside the mind of the alien, but I know this is happening all the time, that aliens come to the United States illegally, and then they claim rights. It's very hard, because the common law always said when you act illegally, you can't get anything out of it, but they come to the United States, act illegally, have the child, and now say, well, we ought to, you know, you pick up the newspaper, you see these arguments being made all the time. How can you break up families and all that stuff? And Conger, there's a couple of responses there, Your Honor. One is that I don't think it's fair to my client to cast her as having made this choice. I think this can certainly be considered as a matter of discretion at the ultimate stage, not the hardship stage, how she got here. And as I said before, the record demonstrates that she was brought here at age 13. She was, you know, joined A8 and 144 to 145. So it is entirely proper for the discretion stage, even if you get past all these other hurdles, even if you establish hardship, the 10 years and everything. We have no quarrel with their considering at the final stage, out of all the people who might be eligible for this, are you one of the most deserving, sympathetic, not guilty of how you came here people that we've seen, or are you not? We think in this case my client would fare quite well if they did that analysis. I say the immigration judge said she was deserving of an exercise of discretion. If they want at that stage to consider whether you're trying to abuse the system, whether you came here of your own volition as an adult, whether you seem to have preplanned this, any number of such things, we completely concede. They have the full authority to consider that in their final exercise of discretion, where my client's other positive factors will come in. The analytic problem here is that's not what they're doing. We'll have you back on the line. Okay. Sorry. But that's not what they're doing. Ms. Young? Good afternoon, Your Honors. May I please the Court? Linda Chang for the Attorney General. The sole issue before this Court today is whether it has jurisdiction to review the discretionary determination of cancellation of removal because Petitioner has failed to show exceptional and extremely unusual hardship. Ms. Chang, let me ask you a question in a second. Did you actually prepare the brief? Yes, I did. Okay. The only question I have is I think it's a little bit risky and perhaps presumptuous that as you said here, the sole issue before us is the jurisdiction for you to not at least cover the merits of the Petitioner's argument in the event that we don't agree with you on the jurisdictional question because you don't have anything in here except jurisdictional arguments. Now, I'm going to leave it at that. You're here in this case and maybe you'll take that message back to your office. I will do that. We've called it full. I could jump in and add gutsy, but I think we just want to hear your argument. Okay. I'll take that back to the office then. Thank you. We determined that despite Petitioner's attempts to recast her claim as legal challenges, she is merely contesting the factual findings of the discretionary determination. And I apologize for that typographical error in the summary of the argument in my brief. This Court has held that there is no jurisdiction in such cases where no tolerable constitutional or legal question is raised, and that is the case here. Accordingly, the Court should affirm the Board's decision to deny the petition for review. Petitioner makes much of the Board's precedential cases dating from 1953 to 1962. However, as Judge Fischer aptly pointed out, there is intervening language in 1962. Additionally, there was the enactment of IRERA in 1996, which changed this form of relief from suspension of deportation to cancellation of removal and purposely tightened this regulation, such that only 4,000 people are granted this type of relief, as my opposing counsel pointed out. Congress purposely decided to tighten the hardship standard in response to what it deemed was being too lax. It went from just extreme hardship to exceptional and extremely unusual hardship. There has been no indication that the Board misapplied its standard of Monreal and Andazola, which Petitioner attempted to make. Now, why isn't that a question, a legal question, whether or not Monreal was wrongly decided? And if it is a legal question, we certainly have jurisdiction over it. That's true. However, Petitioner is arguing in the wrong forum if he wants to overturn Monreal at this point. Why? Monreal is not before the Court right now. It's a matter of Pereja versus Holder. If the Court wished to overturn that decision as it applies to this case in particular, it would be able to. However— So that would be a question of law, would it not? Correct. I mean, it seems to me that Petitioner is arguing that the matter of Monreal was improperly determined, that the BIA's interpretation of the Ninety-Six Law was wrong, and that we should interpret it the way it benefits the Petitioner. I mean, that seems like a legal argument to me of which we have jurisdiction. It would appear that way. However, this Court has held in unpublished decisions, albeit that Monreal and Andazola are proper and reasonable standards to be used by the Board in adjudicating these types of cases. And other circuits have held the same. Why wouldn't it be a legal issue when he says that the Board didn't focus on the hardship to the child, Joanne, if left in the United States? Because the Board didn't want to go into that. He said they should have—they said that's not a real issue because the child isn't going to go back. But he says, well, they had to focus on that because she doesn't have to make that choice, really. She doesn't have to suffer the separation. Why wouldn't that be a legal issue to say, whether you agree with it or not, that they should have focused on the hardship to her, to Joanne, if she stayed in the United States? Isn't that a legal argument? Petitioner doesn't really have a legal argument there simply because in this case she testifies in court that she will take Joanne with her to Mexico, and therefore it was taken off the table. Yeah, that may be factual. That's not going to happen. But isn't it a legal argument that whether she's going to take her back or not, that the Board should have approached it from the assumption that the child would stay in the United States? Now, he may be wrong, but wouldn't that be a legal argument as opposed to a factual argument? Abstractly, yes, that would be a legal argument. However, Petitioner has the burden to demonstrate all the hardships which should be considered, and in this case she took that one off the list, and therefore the Board would not have needed to consider this moot argument, and consequently no legal error was committed by the Board in doing so. Well, that may be that it didn't commit an error, but it's a legal argument that it did commit an error. In other words, he's arguing it as a matter of law. Now, maybe it didn't commit an error, but he's arguing it as a matter of law that it did commit an error. Now, maybe it didn't, but that doesn't mean the argument isn't of law. However, that does go into the discretionary determination of the hardship factor itself and the weighing and balancing of that to Joanne. It might be. He says that's for the next step. He said that's further down the line. I'm concerned about the BIA's somewhat murky discussion of matter of racinus as it applies to this case. Okay. It appears that they attributed, the BIA perhaps wrongfully, attributed weight to the number of children in racinus as it's contrasted to the one child here in this case. The Board discussed matter of racinus and the number of children that she had compared to Petitioner here. However, that was not the only factor that they discussed from matter of racinus. In addition to all the other factors, the Board then properly weighed all this together, which then goes again to the discretionary determination that they had in this situation, and therefore there would be no jurisdiction to reevaluate how it weighed and balanced those factors. Do you think we have jurisdiction to review that? No, I do not believe so. Even if we conclude they were wrong in distinguishing between the number of children? Because that doesn't appear to be in the statute. The Board was not incorrect in distinguishing the case of matter of racinus from this case. It did not misapply. It rather discussed the differences. So there would be no legal error there for the Court to review. Thank you. And if there are no further questions, I'll sum up. In conclusion, Petitioner has not raised any colorable question of law, and her challenges to the Board's rulings essentially take issues with the manner in which it balanced the relevant factors. Thus, this Court lacks jurisdiction over those discretionary determinations, and the Petitioner should be denied. Thank you. Thank you very much. Rebuttal, Mr. Isakson. Yes, Your Honor. Thank you very much. I think at the outset it's worth reemphasizing, because counsel for the Attorney General has referred to us having taken the issue off the table of the hardship to Joanne if she remains in the United States, that counsel below made her and then my best efforts to put it on the table. The record contains an attempt to make an opening statement where she's refused permission to make an opening statement. The judge tells her basically to move straight to questions. That's Joint Appendix 140 to 141. She tries to ask about the hardship to Joanne if Joanne remains in the United States at Joint Appendix 163, 164. DHS objects it's sustained. We argue on appeal that at Joint Appendix 36, 37, that the BIA was wrong to, sorry, that the immigration judge was wrong to sustain the objection that this hypothetical is relevant. We did not take this off the table. Now, as you say, Your Honor, I'm happy to discuss the merits of whether it should be on the table, but I don't think it's fair for the Attorney General to blame us for taking it off the table as an issue of law. On the jurisdictional point, which as Your Honors have said is basically the only point that they're contesting, the point where the final footnote actually I think in effect concedes that if we've made any colorable legal arguments, this should be remanded to the BIA, basically for the BIA to take another crack at answering them. I think this is very clearly parallel in each of its three parts to the various out-of-circuit cases that we have cited applying the principle that this Court put forward in ALACA about application of an erroneous legal standard being a question of law to rather than ALACA's 1252A2C bar for criminal aliens, which is another class of areas where Congress wants to remove from the courts oversight over basically anything that isn't a question of law. But when you argue that a wrong legal standard is being applied, as in ALACA, what's considered a particularly serious crime, that this Court has held is reviewable. What several other circuits have held, this Court hasn't gotten to that final leap yet between 1252A2C and 1252A2B, but logically there isn't a distinction. There are two otherwise absolute bars to this Court's jurisdiction, both of which can be trumped by A2D for issues of law. In Mireles, in the Seventh Circuit, the asserted error was misunderstanding the meaning of exceptional and extremely unusual hardship. Seventh Circuit found jurisdiction. That's very close to our first argument. In Gomez-Perez, the Eighth Circuit found jurisdiction as a matter of law where the asserted error is you considered the hardship to my children as it exists now as opposed to what it will be in the future. That's very similar to our argument about the improper distinction of racinus. You shouldn't be considering how many children I have and adding them up at this stage. You should be considering what the future hardship will be to my one child at this stage. And the Eighth Circuit found jurisdiction there. In Lumita, overcoming a jurisdictional bar that this Court has closely analogized to A2B in Suquam Putra, the First Circuit found jurisdiction actually fines for the petitioner on the merits where the question is the BIA has erroneously charged the petitioner with time. It should not have charged the petitioner with and has failed to give him credit for time it should have given him credit with. These sorts of analytical mistakes, applications of the wrong legal standard, are different from a mere statement that the BIA should have weighed the facts differently on the same scale. We're saying, in effect, they're using the wrong scale. Their scale is different. That's different from the proper scale that they were using. If we had conceded that, it would have come out with a different answer. That's not what we're saying. And that's what the government seems to be assuming we're saying in its jurisdictional argument. Thank you very much, Mr. Eisenstein. Thank you very much, counsel. We will take the case under advisement, and I will ask the clerk to adjourn the proceedings. Thank you.